CASE 106—EQUITY—JANUARY 6, 1883.

# Spalding, &c., v. Wilson & Muir.

APPEAL FROM NELSON CIRCUIT COURT.

Two brothers bought 643 acres of land with partnership funds and for partnership purposes, and upon it ran a distillery.

1. The land must be treated as partnership property, and subject to the debts of the firm.

2. If the land is not an incident to the distillery, the latter may well be an incident to the land.

'3. In a court of equity, in taking account of partnership effects, real estate so held is to be treated as part of the partnership funds, whatever may be the nature of the conveyance.

C. T. ATKINSON for appellants.

1. That the land was purchased with partnership funds is proved by both of the parties, and there is nothing to contradict it.

2. If partnership capital be invested in land for the benefit of the firm, even though it may be a joint-tenancy at law, yet a court of equity will hold it a tenancy in common, and forming a part of the funds of the partnership. (3 Kent's Com., 37; Parsons on Part., 363; Cornwall v. Cornwall, 6 Bush, 359; Bank of Louisville v. Hall, 8 Bush, 678; Adams' Eq., 35; Story's Part., 361; 5 Bush, 100; Wilson v. Soper, 13 B. Mon., 412; 2 Met., 356.)

MUIR & WICKLIFFE for appellees.

1. This is not a contest between the debtors and their creditors, but between two classes of creditors, and the court will see that the debtors are attempting to favor one class to the injury of the other.

2. Parties and privies are estopped to vary or contradict the terms of deeds. (2 Bibb, 28, 173, 246, 311, 321; 1 Mar., 103; 3 J. J. Mar., 626; 16 B. Mon., 6; 1 Mon., 74; 4 J. J. Mar., 584; 16 B. Mon., 284; 9 Bush, 638; 9 B. Mon., 561; 5 Ib., 323.)

3. If, as appellants claim, the mode in which the title is made does not estop inquiry as to how the Nichols and Flagherty tracts were purchased, paid for, and used, the same rule applies to the Cox land, and the deed to S. P. Lancaster amounts to nothing. (4 Met., 352; 2 Bibb, 173; Ib., 311; 1 Mar., 103; 9 Bush, 638; 5 B. Mon., 323; 6 Bush, 76; 11 B. Mon., 321; 16 B. Mon., 321; 13 B. Mon., 411; 4 Bush, 26.)

JUDGE PRYOR delivered the opinion of the court.

This controversy is between firm and individual creditors as to the distribution of assets in the hands of an assignee. S. P. and J. M. Lancaster were engaged as partners in operating a distillery in the county of Nelson, and in the purchase of lands adjacent thereto, for the purposes of producing grain, raising cattle, &c., for the purposes of the partnership. They purchased one tract, containing 600 acres, known as the Nichols farm, and a smaller tract, containing 43½ acres, of one Flagherty. The land was purchased with partnership funds, and from its produce they were enabled

Spalding, &c., v. Wilson & Muir.

to run their distillery at less expense, and to make the firm adventure more profitable, and for this reason they both say the land was purchased. They both swear as to the existence of the partnership. The nature and character of their business, and the manner in which it was conducted, conduces to establish beyond controversy the nature of the partnership, and that the land purchased was embraced by its terms. There is no opposing testimony except the opinions of those who, from certain facts—the principal fact being that the land was conveyed to S. P. Lancaster and J. M. Lancaster—determined that the land was not partnership property. The fact that the conveyances were made to the two jointly does not establish a contrary view of this question. The rule is well settled, that "real estate purchased for partnership purposes, and appropriated to those purposes, and paid for by partnership funds, becomes partnership property." (Parsons on Partnership, page 363.)

In the case of Cornwall v. Cornwall, reported in 6 Bush, this court, after reviewing the authorities, said that "when property is bought with partnership funds, to be used in carrying on and facilitating the partnership business, and is used as a means of continuing and enlarging the partnership business, operations, and profits, it then is partnership property."

Story, in treating of real estate as partnership property, says: "In a court of equity, in taking an account for the benefit of creditors of partnership effects, the real estate is treated, to all intents and purposes, as a part of the partnership funds, whatever may be the nature of the conveyance." (Section 674.)

Both of these partners say the land was bought for the partnership, and for facilitating the purposes for which it

was formed.    They state, when the partnership was entered into, that one object in buying the land was to enable them to raise corn for the purposes of the distillery without buying it of others; that the firm assets purchased it, and the operations of the firm, and the manner in which they were conducting their business, seems to have been well known in the community.    If these partners, or one of them, had sold his individual interest in the land to an innocent purchaser, the deed having been made to them not as a firm, there might be some reason for denying to the other partner the right to have the entire land appropriated to the payment of the firm debts; but no such case is presented by this record.    The only argument in favor of the individual creditors is, that as much land as six hundred acres ought not to be regarded as a mere incident to the running of a distillery.    This might be convincing if the land had not been purchased with the partnership funds, and used for partnership purposes.    Its products were all applied in that way, and besides, the partners seem to have been doing an extensive business in buying land, stock, &c., and why the land should not constitute a part of the partnership assets, under such circumstances, is a question not easily answered. . If the land is not an incident to the distillery, the latter may be an incident to the land.

The case of Buck v. Muir, reported in 11 B. M., is by no means decisive of this case.    There the lots were purchased on speculation by the partners, and not used in the partnership, and still this court held the weight of authority to be "that in equity the lots would be considered as forming a part of the partnership assets."

In Devine v. Michun, 4 B. M., the conveyance was made to the partners jointly, and not as partners.    They used the

real estate as partnership property, and so treated it. This court held the claim of one partner for advancements made as superior to the claim of a mortgagee. It is said in that case that the claim of a *bona fide* purchaser, without notice, under such a conveyance, would be entitled to much consideration; but the claim of the mortgagee was postponed to that of the partner, because the property was in the possession of and being used by the firm, and this fact was known to the mortgagee. If the doctrine that a creditor who levies his execution, and purchases the property, as in the case of Buck v. Muir, without notice of its being partnership property, is to apply, and the purchaser permitted to hold it, still it cannot affect the question here. This was an assignment by the partners of all their estate to an assignee for the payment of debts, with the direction to the assignee to pay the individual and firm creditors *according to the legal* rights of each; *in other words*, the proceeds of the estate is to be distributed between the creditors as the law would distribute in a case where the parties were insolvent, and no assignment had been made.

In the case of Lowe v. Lowe, reported in 13th Bush, Thomas W. Lowe and J. J. Monroe were partners, as was alleged, in the business of farming, and purchased land and stock with the partnership assets. Lowe died without children, and his widow claimed that the land owned by the partners was impressed with the character of personal estate, and that she was entitled to one-half of his interest in the partnership lands. The court held in that case that whenever it appeared, by the express agreement of the parties, or by necessary implication from the facts, that partners intend to treat their real estate as part and parcel of their

capital stock, not only for the purposes of the partnership, but for all purposes, that it must be so regarded, even for purposes of *distribution;* but, in the absence of facts show- ing that it was regarded by the partners as personalty for all purposes, it should only be regarded as such for the purposes of the partnership, and after these are answered, the surplus should be held to be real estate.

The doctrine is also well established "that the partners must have intended partnership real estate to be treated as partnership assets, and therefore as personalty, so far as might be necessary for the payment of partnership liabili- ties, must be assumed in all cases, unless a contrary inten- tion be plainly manifested," &c.

Says Chancellor Kent: "There is no need of any other agreement than that the law will necessarily imply from the fact of the investment of partnership funds by the firm in real estate for partnership purposes."

In this case S. P. and J. M. Lancaster, the two partners, were both brothers and bachelors, holding everything in common, running a distillery, and investing the profits in land near to or adjacent, and upon this land raising the corn used and the cattle fed at the distillery, for partnership pur- poses.  Each one of these partners had the right in equity to have the partnership liabilities satisfied and discharged out of the partnership effects, as the realty must certainly be regarded, so far as the partners are concerned, as con- verted into personalty for the purposes of the partnership.

In Lowe v. Lowe, where the parties were partners in farming, and in buying and selling land, the chancellor, at the instance of either partner, could have required the pay- ment of the partnership debts before ordering a partition, or a sale and distribution of the proceeds, and this, too,

when he would have adjudged, in the case of the death of one of the partners, that the surplus would have descended to the heirs of the deceased partner as realty. It results, therefore, that the court below erred in refusing to apply the proceeds of the Nichols farm and the Flagherty land to the payment of the firm debts.

The chancellor also erred in allowing to the widow the rents of the home farm from the year 1865 to 1879. The statute of limitation was pleaded to this claim, and, we think, should have defeated the claim, or rather, confined the recovery to the rent for five years prior to the assignment. After the transfer to the assignee, he should also account to her out of the assets for the rent of her interest, and this should have priority in the event he took possession of the land by himself or agent.

For the reasons indicated, the judgment is reversed, and cause remanded for further proceedings consistent with this opinion.

JUDGE PRYOR DELIVERED THE FOLLOWING—

In response to the petition asking for an extension of the opinion:

While the individual names of a firm to an obligation may evidence an individual liability, still it may be a partnership liability, and in such a case it may be shown that the money went into the firm, or was, in fact, a partnership transaction. The individual names of partners on paper, as the sureties of others primarily liable, would create an individual liability, because it has no connection with the partnership. It is not a part of the firm business to become the surety of others.

Petition overruled.